**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Town of Colorado City, an Arizona municipality,<br><br>Plaintiff,<br><br>vs.<br><br>United Effort Plan Trust, et al.,<br><br>Defendants. | No. CV11-8037-PCT-DGC<br><br>**ORDER** |

Defendants Ronald and Jinjer Cooke ("the Cookes") move to dismiss Plaintiff Colorado City's Amended Complaint (Doc. 16) pursuant to Rule 12 of the Federal Rules of Civil Procedure. Doc. 41. The Cookes previously joined a motion to dismiss by Defendants Bruce Wisan and United Effort Plan Trust (collectively, "the Trust Defendants") (Doc. 32), which the Court denied on January 4, 2012 (Doc. 43). The instant motion is fully briefed. Docs. 41, 44, 45. No party has requested oral argument. For the following reasons, the Court will deny the motion.

**I.     Background.**

In 1942, members of the Fundamentalist Church of Jesus Christ of Latter-Day Saints ("FLDS") established the United Effort Plan Trust ("UEP Trust") under Utah law. Doc. 16, at 3. From its establishment in 1942 until 1998, the UEP Trust was considered a charitable, religious trust. *Id.* In 1998, the Utah Supreme Court issued a decision in *Jeffs v. Stubbs*, 970 P.2d 1234 (Utah 1998), holding that the UEP Trust was not a charitable trust because it specifically named identifiable beneficiaries. *Id.* at 4. The *Jeffs* court

reformed the UEP Trust. *Id.* The UEP Trustees then restated the Trust and redefined its beneficiary class. *Id.*

On May 26, 2005, the Utah Attorney General brought an action for breach of trust (the "trust litigation") against the UEP Trustees in the Fifth Judicial District Court for the State of Utah. *Id.* The Utah Attorney General brought the action as a probate matter pursuant to Utah's Uniform Trust Code and sought an order suspending the authority and power of the Trustees and appointing an interim special fiduciary to preserve the assets of the Trust. *Id.* at 4-5. Judge Denise Lindberg, who presided over the trust litigation, granted the motion for a temporary restraining order, removed the trustees, and appointed Bruce Wisan to act as UEP Trust's special fiduciary. *Id.* at 5. On October 13, 2005, Judge Lindberg issued a memorandum decision holding that the Constitution forbade her from reforming the Trust on the basis of religious doctrine, and consequently sought to apply neutral principles of law to the reformation. *Id.* On October 25, 2006, Judge Lindberg created the reformed UEP Trust and expanded the special fiduciary's powers, vesting Wisan with extensive authority to manage Trust property, including identifying and providing homes to UEP Trust beneficiaries. *Id.* at 6.

On October 6, 2008, the FLDS filed a lawsuit in Utah federal district court against Wisan, the Utah and Arizona attorneys general, and Judge Lindberg, claiming that the Utah state court's reformation of the UEP Trust, specifically divorcing the Trust's operation from its religious underpinnings, and subsequent administration of the trust through the special fiduciary, violated their First Amendment rights (the "FLDS Lawsuit"). Doc. 16, at 6. On February 24, 2011, Judge Dee Benson granted a preliminary injunction in favor of the FLDS, which has been stayed and is currently pending before the Tenth Circuit. Doc. 32, at 4.

In 2008, Wisan issued an occupancy agreement to Ronald and Jinjer Cooke on property located at 420 East Academy, Colorado City, Arizona (the "Property"). *Id.* The Property did not have a culinary water connection, and a dispute arose between the Cookes and various municipal bodies as to whether a new water connection should be

established. Doc. 16, at 11-12. In June 2010, the State of Arizona filed a lawsuit against Colorado City in Maricopa County Superior Court. *Id.* at 13. The Cookes filed a corresponding lawsuit alleging discriminatory and unlawful housing practices in Arizona federal district court (the "Cooke Litigation"). *Id.* The State intervened in the Cooke Litigation, and that case is now proceeding as a single action in this court before Judge Teilborg. No. CV10-08105-JAT.

Prior to 2007 and Wisan's appointment as special fiduciary, Robert Black occupied the Property. Doc. 16, at 13. In 2001, Black obtained a building permit from Colorado City to construct a home on the property. *Id.* at 14. UEP Trust and Wisan have since declared that Black abandoned the Property, but did not take any action to extinguish Black's right to occupy the Property as required under Arizona law. *Id.* UEP Trust and Wisan assigned the Property to the Cookes, as discussed above. *Id.* Black has asserted an ongoing right to occupy the Property, including applying for another building permit. *Id.* at 15.

On July 7, 2011, Plaintiff Colorado City filed an Amended Complaint in this case. Doc. 16. In Count One, Colorado City asks this Court for a declaration regarding whether Wisan's actions as special fiduciary following the UEP Trust reformation were unconstitutional. Doc. 16, at 15. In Count Two, Colorado City seeks a declaration from this Court regarding whether the Cookes or Black have the right to occupy the Property. *Id.* Judge Teilborg has denied Colorado City's motion to transfer and consolidate this case with the Cooke Litigation. Doc. 42.

**II.   Rules 12(b)(1) and (6).**

The Cookes have not specified the basis for their motion to dismiss under Rule 12. Based on the substantive arguments in the motion, the Court concludes that the Cookes seek dismissal for lack of subject matter jurisdiction and failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6).

Dismissal is appropriate pursuant to Rule 12(b)(1) where the court lacks subject matter jurisdiction over a claim. Fed. R. Civ. P. 12(b)(1). The Court presumes that a

claim lies outside the jurisdiction of federal courts unless proven otherwise. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Plaintiff bears the burden of establishing that jurisdiction exists. *Indus. Techtonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990). A Rule 12(b)(1) jurisdictional attack may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. In resolving a facial attack, the Court must accept the factual allegations of the complaint as true and draw all reasonable inferences in Plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). In resolving a factual attack, the Court "may review evidence beyond the complaint without converting the motion to dismiss to a motion for summary judgment." *Safe Air*, 373 F.3d at 1039. The Court may not resolve genuine factual disputes if the jurisdictional issue and substantive issues are intertwined. *See id.*; *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Where such issues are intertwined, the Court must find that jurisdiction exists and address the motion to dismiss as a motion for summary judgment attacking the merits of Plaintiff's case. *Safe Air*, 373 F.3d at 1039-40, n.3.

Dismissal is appropriate pursuant to Rule 12(b)(6) where the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When reviewing a complaint under Rule 12(b)(6), all allegations of material fact "are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). Dismissal is appropriate where the complaint lacks a cognizable legal theory, lacks sufficient facts alleged under a cognizable legal theory, or contains allegations disclosing some absolute defense or bar to recovery. *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

**III. Discussion.**

The Cookes move to dismiss the Amended Complaint on two grounds: that Plaintiff lacks standing under the Declaratory Judgment Act, and that the Court should exercise its discretion to abstain from exercising subject matter jurisdiction. They also assert that regardless of the outcome of the instant action, they will retain their right to occupy the Property. The Court notes that the instant motion to dismiss applies only to Count Two of the Amended Complaint, because that is the only claim involving the Cookes.

**A. Plaintiff's Standing.**

The Cookes challenge Colorado City's standing to seek declaratory relief, arguing that (1) Colorado City does not ask the Court to declare its own rights and responsibilities, but rather asks the Court to intervene in an alleged dispute between two private parties, the Cookes and Black, (2) Colorado City does not allege sufficient facts for the Court to conclude that it suffers any injury, and (3) Colorado City does not allege sufficient facts to establish the immediacy of any injury. Doc. 41, at 2-3.

The Declaratory Judgment Act permits a federal court to "declare the rights and other legal relations" of parties to "a case of actual controversy." 28 U.S.C. § 2201. "The 'actual controversy' requirement of the Act is the same as the 'case or controversy' requirement of Article III of the United States Constitution." *Societe de Conditionnement en Aluminium v. Hunter Eng'g Co., Inc.*, 655 F.2d 938, 942 (9th Cir. 1981). In determining whether an actual controversy exists under the Act, the question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *see also Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (To have standing, a plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.").

### 1.     Adverse Legal Interests.

Colorado City has asked the Court to declare its rights and responsibilities, as permitted under the Declaratory Judgment Act. The Cookes correctly assert that Colorado City seeks to resolve a property dispute between other parties, namely the Cookes and Black. Doc. 41, at 4. Resolution of this dispute, however, would clarify the legal relations between Colorado City, the Cookes, and Black. As evident from the pending litigation before Judge Teilborg, in which the Cookes have alleged claims against Colorado City for unlawful discrimination, the Cookes and Colorado City are parties with adverse legal interests for purposes of meeting the "actual controversy" requirement. *See Cooke, et al. v. Colorado City, et al.*, No. 10-CV-08105-PCT-JAT.

The Cookes express concern that if the Court were to hold that Colorado City has standing in this case, "it would be the case that a municipality could always claim standing to ask for a Declaratory Judgment whenever two parties are in a squabble concerning their right to occupy a piece of property within the City's boundaries." Doc. 41, at 4. In support of this assertion, the Cookes cite *Town of Wickenburg v. State*, 565 P.2d 1326 (Ariz. App. 1977), in which the court held that a municipality lacked standing to bring a suit seeking to protect the rights of its citizens. Here, the Cookes and Colorado City have adverse legal interests. Colorado City does not seek to enforce the rights of its citizens. Rather, it seeks clarification of its own rights and obligations.

### 2.     Injury.

The Cookes make a facial challenge to Colorado City's standing, arguing that Colorado City has not alleged sufficient facts for the Court to find that it is threatened with actual injury. Colorado City asserts that it will likely have to drill a new well in order to provide a culinary water connection for the Cookes, which may cost as much as $150,000. Doc. 16, at 13, ¶ 88. "Until a determination is made as to which person or persons have/has the lawful right to occupy the property, Colorado City does not know how to act. Colorado City may find itself required, as part of the *Cooke* lawsuit, to provide a new water connection to property which the Cookes may not be lawfully

entitled to inhabit." Doc. 16, at 16, ¶ 115.

The Court will not assume, as the Cookes suggest, that "[p]resumably, either Ronald Cooke or Robert Black, as an occupant of the property, would be entitled to have water provided by the City" and that "Colorado City would owe the same duty to either[.]" Doc. 45, at 4. In resolving facial jurisdictional attacks under Rule 12(b)(1), the Court must accept Colorado City's factual allegations as true and draw all reasonable inferences in its favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). At this stage in the proceedings, it is reasonable for the Court to infer that Colorado City may not have to provide a water connection if Black were declared the lawful occupant. Colorado City has alleged sufficient facts showing that the uncertainty surrounding the occupancy rights to the Property poses a threat of actual injury.

### 3. Immediacy.

The Cookes argue that Colorado City has not alleged sufficient facts to establish the immediacy of any threat that may cause it damage. Doc. 41, at 3. While this statement appears to be a facial challenge, the Cookes proceed to dispute the truth of Colorado City's allegation that Black has asserted a competing interest in the Property. Doc. 16, at 13-15, ¶¶ 92-103. The Court will accordingly treat the Cookes' argument on the immediacy component as a factual attack on Colorado City's standing. In doing so, the Court may review evidence beyond the Amended Complaint without converting the motion to dismiss into a motion for summary judgment. *Safe Air*, 373 F.3d at 1039. The Court may resolve the factual dispute without addressing the instant motion as a motion for summary judgment because the jurisdictional issue and the substantive issue are not intertwined. *See id.* at 1039-40, n.3. Whether Black has asserted a competing interest in the Property has no bearing on whether Wisan's actions as special fiduciary were constitutional and whether the Cookes or Black have the right to occupy the Property. *Cf. Safe Air*, 373 F.3d at 1039-40 (holding that the question of jurisdiction and the merits of an action are intertwined where a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief).

The Cookes argue that "[n]ot only did Black never reside in the house, Plaintiff knows that he specifically told Jethro Barlow, agent of the Special Fiduciary to UEP, prior to the Cookes moving to the [Property], that he had no further interest in the [P]roperty and did not intend to go back to it." Doc. 41, at 6. They quote and attach excerpts of Black's deposition from the case before Judge Teilborg that purport to contradict allegations in the Amended Complaint. Doc. 41, at 5-7; Doc. 41-1 (Ex. A). When questioned about his conversation with Mr. Barlow, Black said: "I remember telling him that I didn't have any interest – I don't remember exactly what I said, but I know I implied to him that I had no interest in him, his role in the UEP, and what he was doing, and I still don't." Doc. 41-1, at 8 (Black Depo. 43:9-12). When asked if he knew that Mr. Barlow was asking whether he had an interest in the Property, Black responded: "That was a long time ago. I don't remember exactly what I said. . . . All I know is, I remember being kind of peeved at him because of his aura and the way he came over to talk to me." Doc. 41-1, at 10 (Black Depo. 45:8-9, 13-15). This testimony does not show that Black had no further interest in the Property and did not intend to return.

In the Amended Complaint, Colorado City asserts that in September 2009, Black advised the city utility board that he intended to continue asserting his rights to the property, and that Black told the city council that he believed he was entitled to inhabit the Property. Doc. 16, at 14-15, ¶¶ 90-100. Colorado City further asserts that in October 2009, Black applied for another building permit for the Property. *Id.* at 15, ¶ 102. The Cookes have not presented facts that disprove these assertions. Given Colorado City's claim that Black intends to continue asserting a right to occupy the Property, the Court concludes that Colorado City has shown sufficient immediacy to the harm that may arise from the alleged dispute between the Cookes and Black.

### B. Retroactive Validity of the Leases.

The Cookes argue that, regardless of the Court's determination on the merits of Colorado City's claims, they will retain the right to occupy the Property because Wisan was the lawful administrator of the UEP Trust when they entered the occupancy

agreement. Doc. 41, at 7-8. In support of this argument, they cite an order by Judge Teilborg in the related case. That order reads, in relevant part:

> [The Cookes'] occupancy agreement was executed when Bruce Wisan was the legal administrator of the UEP and was charged with the authority to assign the Trust's land to its beneficiaries. . . . [T]he Utah state court's ruling that required the reformation of the UEP, and the appointment of Bruce Wisan as Special Fiduciary, was firm and applicable until held unconstitutional in the Utah district court. . . . The Utah district court chose not to resolve the issue of whether the UEP's lease agreements, executed under Bruce Wisan's administration of the Trust, are currently or retroactively invalid. Neither the Court's independent research nor the parties' respective briefs offer any authority suggesting that the Cookes' standing to bring the instant action ceases in the event that either their lease is found invalid after the fact or that Robert Black is determined the rightful occupant.

CV-10-8105-PCT-JAT, Doc. 89, at 6-7. The order notes that the Utah district court has not yet decided whether the leases granted by Wisan are retroactively invalid, thus recognizing, without opining on, the possibility of such an outcome. The order was instead concerned with whether the Cookes had standing to bring their discrimination claim. There is currently no basis for the Court to find that the Cookes' lease was necessarily valid and that they would retain the right to occupy the Property regardless of the merits of Colorado City's claims.

### C. The Court's Discretion Under the Declaratory Judgment Act.

The Court has discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201, to grant or decline jurisdiction over declaratory actions: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The statute is "deliberately cast in terms of permissive, rather than mandatory, authority." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 250 (1952) (J. Reed, concurring)). The

Court's discretion is not unfettered; it must look to the *Brillhart* factors for guidance in exercising its discretion. *See Dizol*, 133 F.3d at 1223. "The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." *Id.* at 1225.

The Cookes ask the Court to refrain from exercising its discretion to reach the merits of Colorado City's claims. Doc. 41, at 10. They cite *National Cancer Hospital of America v. Webster*, in which the Second Circuit upheld the district court's decision to decline jurisdiction over a declaratory relief action because the complaint was "no more than an effort to use the District Court to review decisions already made by the state court[.]"  251 F.2d 466, 468 (2d Cir. 1958). The Cookes' reliance on *Webster* is misplaced because Colorado City's claims do not implicate review of state court decisions or state law issues.

The Cookes further argue that the Utah litigation before Judge Lindberg and Judge Benson have already provided the parties with "two separate forums for litigating these issues." Doc. 41, at 11. The case before Judge Lindberg was an action brought by the Utah Attorney General for breach of trust against the UEP Trustees. Doc. 16, at 4. The case before Judge Benson involved a First Amendment claim by the FLDS against Wisan, the Utah and Arizona attorneys general, and Judge Lindberg. Doc. 16, at 6-7. Colorado City was not a party in either of those actions, and neither of those actions involved the issues presented here. *See* Doc. 44, at 8. There is no evidence that Colorado City is engaging in forum shopping.

After considering the *Brillhart* factors, the Court will not dismiss the action based on the Cookes' motion. The Court agrees with Colorado City that hearing this action will "serve a useful purpose to clarify and settle the legal relations at issue." Doc. 44, at 8. In the related action before Judge Teilborg, CV10-08105-JAT, the Cookes allege that Colorado City discriminated against them by denying them a culinary water connection on the basis of religion and disability. Doc. 16, ¶ 60. The discrimination claims before

Judge Teilborg are distinct from the issues in this action. Resolving the discrimination claims will not clarify whether the Cookes or Black have the right to occupy the Property. The action before Judge Teilborg will not clarify all of the legal relations at issue in the instant action because only Colorado City and the Cookes are named in both actions. Black is a party in this action and will be affected by Colorado City's second claim, but is not named in the action before Judge Teilborg. While any relief that the Court grants in this case will not be binding in the case before Judge Teilborg, and vice versa, it is irrelevant under the Declaratory Relief Act whether the parties can or do seek further relief based on the Court's declaration of rights. At this stage in the proceedings, the Court will not refuse to exercise its discretion to grant declaratory relief.

**IT IS ORDERED** that the Cookes' motion to dismiss (Doc. 41) is **denied**.

Dated this 22nd day of February, 2012.

_David G. Campbell_
United States District Judge